[No. 27100. *En Banc.* December 23, 1938.]

CHESTER LEACH, *a Minor, by Julia Leach, his Guardian ad Litem, Appellant,* v. SCHOOL DISTRICT NO. 322 OF THURSTON COUNTY, *Respondent.*[1]

*J. O. Davies,* for appellant.

*Robert E. Evans, John P. O'Connor,* and *Smith Troy,* for respondent.

HOLCOMB, J.—The trial court entered an order sustaining a demurrer to the amended complaint, and a judgment dismissing the action with prejudice, from which judgment this appeal is taken.

[1]Reported in 85 P. (2d) 666.

Appellant brought this action through his guardian *ad litem,* Julia Leach, and alleged that he is thirteen years of age and a regular pupil at a grade school of respondent district; that the latter maintained and operated a 1930 model Ford school bus for the transportation of pupils to and from the school and their homes; that the bus was constructed with two folding doors in the right front end for the entry and departure of pupils; that, through the negligence of respondent, each of the front doors had a pane of glass, approximately a foot from the bottom of each door, 12x15 inches in size, neither of which was made of "plate glass, safety glass, or shatter-proof glass," and that each of these kinds of glass was well known and easily obtainable in the open market and had been in common use in school busses and motor vehicles for several years prior to March 10, 1937, and the injuries referred to hereinafter would not have been sustained but for the absence of the above-mentioned types of glass.

Appellant alleged further that, March 10, 1937, at about 3:30 p. m., the bus was driven in front of the schoolhouse for the purpose of transporting pupils to their homes; that, at the time the bus appeared, appellant and a large number of other pupils were standing in front of the schoolhouse waiting for it at the usual and customary place where the school bus stopped to pick up the children at the school in question; that, when the bus stopped, one or more of the pupils jostled appellant, thereby causing him to lose his balance and fall toward the front doors of the bus; and that, in attempting to protect himself, appellant put forward his hands, which came in contact with the panes of glass on each of the front doors, the panes of which broke, thereby cutting and lacerating his hands and wrists and resulting in injuries of a temporary char-

acter to the right hand and permanent injuries to the left hand.

Appellant assigns as error the sustaining of the demurrer and the entry of the judgment of dismissal.

It will be admitted that a bus for conveying children to and from school acts as a carrier, and it is incumbent upon the school district to exercise towards its passengers the highest degree of care consistent with the practical operation of the conveyance. *Phillips v. Hardgrove,* 161 Wash. 121, 296 Pac. 559. It is also recognized that a carrier, in entering a crowd either preparatory to loading passengers or discharging them, must act to guard against perilous situations which frequently arise or which it could reasonably anticipate. *Savickas v. Boston Elevated R. Co.,* 239 Mass. 226, 132 N. E. 29. It is equally well settled that a carrier is not required to take precautionary measures against the occurrence of accidents which it could not reasonably foresee. *Chesapeake & O. R. Co. v. Hibbs,* 142 Va. 96, 128 S. E. 538, 41 A. L. R. 1083; *Maillefert v. Interborough Rapid Transit Co.,* 50 Misc. 160, 98 N. Y. Supp. 207; *Jackson v. Boston Elevated R. Co.,* 217 Mass. 515, 105 N. E. 379, 51 L. R. A. (N. S.) 1152; *Marr v. Boston & M. R. R.,* 208 Mass. 446, 94 N. E. 692; *Glyn v. New York & H. R. Co.,* 66 N. Y. St. 426, 32 N. Y. Supp. 1021.

The amended complaint does not contain any allegation either to the effect that any such accident had ever occurred before, or that respondent reasonably could have foreseen that the accident, with its resulting injuries, would occur. The pleadings are also barren both of any allegation with respect to negligence on the part of respondent by reason of the absence of regulations to protect passengers or prospective passengers from injury, and of any averment that respondent was derelict in the discharge of its duties

as a carrier in regulating the jostling and pushing by the pupils waiting to enter the bus.

Assuming, without deciding, that appellant was a passenger at the time he sustained his injuries, it is necessary to ascertain if the situation which gave rise to the injuries is one which was reasonably foreseeable and anticipatable so as to require precautions to be taken, that is, the installation of plate glass, safety glass, or shatter-proof glass.

Appellant stresses the fact that Laws of 1937, chapter 189, p. 865, § 40, Rem. Rev. Stat., Vol. 7A, § 6360-40 [P. C. § 2696-777], provides it shall be unlawful on and after January 1, 1938, to operate upon any public highway of this state any motor vehicle which is registered in this state and which shall have been manufactured or assembled on or after January 1, 1938, unless such motor vehicle be equipped with safety glass wherever glass is used in partitions, doors, windows, and windshields. That statute did not become effective until April 1, 1937, and, the accident having occurred March 10, 1937, it cannot be said to have any application to the present proceeding.

Appellant also insists that respondent was under a duty to equip its busses with the latest inventions and devices known to art and science to render them safe for passengers.

"A carrier, however, is not required to adopt and use every new and untried machine or appliance, or the *best in use,* but which is not in general use; . . ." (Italics ours.) 10 C. J. 956, § 1374.

In *Adduci v. Boston Elevated R. Co.,* 215 Mass. 336, 102 N. E. 315, 45 L. R. A. (N. S.) 969, the court said:

"While a common carrier is bound to exercise a high degree of care and diligence in the selection, maintenance, inspection and use of its cars and their appliances, it is not required to provide immediately and regardless of expense every new equipment that human

skill and ingenuity devises to prevent accidents. It is bound to adopt approved appliances that are in general use and necessary for the safety of passengers, but it is not obliged to discard those that always have been found to be adequate and safe merely because they may be a source of possible danger to a passenger. . . ."

While a carrier of passengers is obligated to adopt new inventions, and to keep pace with new developments in science within reasonable limits, we are not prepared to say that shatter-proof or safety glass was so widely in use under the conditions involved here at the time appellant's injuries were sustained, or that a peril was occasioned by the absence thereof sufficient in character to require its presence, and that the failure to equip the busses with this new device, in and of itself, constituted negligence. The mere fact that Rem. Rev. Stat., Vol. 7A, § 6360-40, was enacted and became effective a short time after appellant sustained his injuries, does not in any wise establish that safety or shatter-proof glass were in general use.

In *Madden v. New York Cent. & H. R. R. Co.*, 98 App. Div. 406, 90 N. Y. Supp. 261, the carrier was held not to be liable for injuries sustained by a passenger who was crowded by other passengers so that his hand was forced through a glass in the upper part of a car door. Notwithstanding the fact that this case was decided in 1904, we think the observation of the court was pertinent. The court stated:

"We think the evidence fails to establish the negligence of the defendant. For aught that appears, there were ample accommodations for the transportation of all the passengers, but in their impatience they crowded into the nearest car, and rushed through it pell mell, either aimlessly or to obtain seats. The defendant could not reasonably be expected to check this onrush. The casualty was an unusual one, and could not have been apprehended by the defendant. That a passenger would be jostled by his fellow passengers, and, as a

consequence of the impact, his arm be jammed through the window of the car door, was not within the range of reasonable foresight. While the plaintiff was a passenger with a regular ticket, and entitled to the consideration due a passenger in the custody of a common carrier, yet he knew there was a crowd of excursionists, and that the ordinary conditions did not exist. The defendant apparently had made adequate preparations to take care of all the people desiring transportation, and in effect so advised them, and before the train started all on board may have been furnished with seats. The case is within that class of cases where the unexpected occurs, resulting in injury, and for which no legal liability attaches. *Fahner v. Brooklyn Heights R. Co.,* 86 App. Div. 488, 83 N. Y. Supp. 815. "

In *Hudgins v. Georgia Power Co.,* 43 Ga. App. 627, 159 S. E. 723, decided in 1931, plaintiff was standing in a place designated for passengers to stand to wait for street cars. A street car, traveling in the direction in which plaintiff desired to ride, stopped, and he assumed this car had stopped for the purpose of taking on passengers. When plaintiff had waited a reasonable time for the door to open, and it had failed to open, he concluded the conductor had failed to appreciate that a passenger desired to board the car. Plaintiff then tapped lightly with his hand upon the door for the purpose of attracting the attention of the conductor, when the glass fell out of the frame of the door and across plaintiff's hand and wrist, thereby causing the injury sustained. The court stated:

"The petition alleged that the glass was defective in certain particulars, . . . but the petition fails to show that the glass was intended to be applied to any such use, or that it was defective for the purposes for which it was intended as a part of the door of the street-car. Presumably, the glass was intended only to furnish light and clear vision, and was expected to possess sufficient strength to withstand the ordinary jar and vibration incident to the motion of the street-car

and the opening and closing of the door for the receipt and discharge of passengers. The petition contains no allegations to show that the glass was not of sufficient strength to answer these purposes, or that it was unsuited by any defect for the purposes for which it was intended, and alleges no facts as to any custom or usage on the part of the public or of those desiring passage upon street-cars to request admission by tapping the glass, as the plaintiff did in this case. Nor is it otherwise shown that the defendant should have anticipated that any person would tap the glass in the manner stated, so as to raise a duty to provide a glass of sufficient strength for such use."

In conclusion, we do not feel justified in imputing negligence to respondent by reason of its failure to have the doors of its busses equipped with the kinds of glass referred to in the amended complaint, for the reason that the situation which presented itself, resulting in appellant's injuries, is not one which may reasonably be anticipated so as to require precautionary measures of that nature to safeguard against its occurrence.

The judgment is affirmed.

STEINERT, C. J., BEALS, GERAGHTY, ROBINSON, and SIMPSON, JJ., concur.

BLAKE, J. (dissenting)—I dissent. The majority opinion assumes that the plaintiff was a *passenger*. The defendant was, therefore,

" . . . bound to avail itself of all new inventions and improvements known to them [it], which will contribute materially to the safety of their [its] passengers, whenever the utility of such improvements has been thoroughly tested and demonstrated, if the adoption of such improvements is within their [its] power and reasonably practicable." 10 Am. Jur. 203, § 1319.

That shatter-proof glass had been thoroughly tested and its use had become reasonably practicable long

before this cause of action arose, seems to me to be beyond controversy. Indeed, so common had its use become that the legislature in 1937 saw fit to require it in vehicles registered and used in this state subsequent to January 1, 1938. Laws of 1937, chapter 189, p. 865, § 40. Of course, that act, not being effective when this accident occurred, does not make defendant guilty of negligence as a matter of law, but the act does attest to facts of which the court should take judicial notice: That, long before this cause of action arose, shatter-proof glass had been thoroughly tested; that it was available; that its use was reasonably practicable; that it affords a factor of safety to passengers of such a character that common carriers, in the exercise of the highest degree of care, are bound to equip their vehicles with it.

But the majority say that the complaint

" . . . does not contain any allegation either to the effect that any such accident had ever occurred before, or that respondent reasonably could have foreseen that the accident, with its resulting injuries, would occur."

I do not believe a case can be found where a complaint in a negligence action has ever before been held deficient for want of such allegations.

Children scrambling and pushing each other to be first to get into a car or into a vehicle is too common a sight to be ignored. That common ordinary panes of glass will break if subjected to substantial pressure, is an eventuality which even a reasonably prudent person should anticipate—much more one who is charged with the highest degree of care. That injury will result to one whose arms are thrust through panes of glass, would also seem obvious.

It seems to me that this accident was readily "foreseeable," under the doctrine expounded in *Hellan v. Supply Laundry Co.,* 94 Wash. 683, 163 Pac. 9:

"This court, in common with some others, has said that 'any injury which could not have been foreseen or reasonably anticipated as the probable result of an act of negligence is not actionable,' in that the act is too remote to be a proximate cause. *Ottevaere v. Spokane,* 89 Wash. 681, 155 Pac. 146. But that language must not be taken in an absolute sense. It does not mean that the probability of injury must be so obvious as to be necessarily anticipated by the wrongdoer, nor does it mean that he must have reasonably anticipated that injury would probably result to the exact person or in the exact form or way in which it did result. 1 Shearman & Redfield, Negligence (6th ed.), §§ 28, 29 and 29a."

Furthermore, this court has held that even one charged with exercising merely reasonable care (the driver of an automobile on the streets) is bound to exercise more caution with respect to children than toward adults. *Blair v. Kilbourne,* 121 Wash. 93, 207 Pac. 953. Contrasting duties toward adults and toward children, in a case involving injury to a child after alighting from a school bus, this court has said:

"But the rule in that case cannot be extended to cover this one, because children will be children, where the school bus in the center of a much traveled highway at a point intersected by another road lets the children out in the middle of the highway without any warning, to go as their fancy dictates, and one of them is injured in a few feet of the corner of the bus. That is, it cannot be so held as a matter of law, but must be left to the jury." *Machenheimer v. Falknor,* 144 Wash. 27, 255 Pac. 1031.

It seems to be suggested in the majority opinion that the jostling of the children was the proximate cause of the accident. It may be properly said that the jostling of the children was *a* proximate cause. But if the panes of glass had not broken, the plaintiff would not have suffered injury. The rule stated in *Hellan v. Supply Laundry Co., supra,* should be applied here:

"There may be more than one proximate cause for the same injury. The negligence of different persons, though otherwise independent, may concur in producing the same injury. In such a case, all are liable. They may be held either jointly or severally. The negligence of one is no excuse for that of another."

Believing the complaint states a cause of action, I think the judgment should be reversed.

MAIN and MILLARD, JJ., concur with BLAKE, J.